**Red Vision Systems, Inc. v. National Real Estate Information Services, L.P.**

*Roy E. Leonard, Paul R. Rennie*, for plaintiffs.
*Thomas K. Lammert, Jr.*, for defendants.

WETTICK, *J.*, February 26, 2014—Plaintiffs provided reports of title searches and related real estate services to defendants for which they were not paid. Plaintiffs aver that more than $530,000 is owing. In this litigation, plaintiffs have raised claims for breach of contract and unjust enrichment against each of the three defendants.

Thomas K. Lammert, Jr., is the former in-house general counsel to each of the defendants.

After the complaint was filed, plaintiffs learned that defendants are no longer operating entities and/or have been dissolved.

On information and belief, plaintiffs allege that defendants transferred substantial assets to unknown successor entities in order to avoid paying creditors, including plaintiffs. Thus, they seek discovery to obtain information relating to the disposition of defendants' assets and to identify possible sources of recovery. The information which plaintiffs seek may permit plaintiffs to amend their complaint to raise causes of action based on the law governing fraudulent transfers.

Plaintiffs state that Mr. Lammert is the only person of whom they are aware with information concerning the identity of the persons who were involved in the cessation and transfer of assets.

Plaintiffs seek to depose Mr. Lammert and to have him produce at his deposition documents described in

attachment 1.[1]

Mr. Lammert has filed a motion to quash subpoena and for protective order that is the subject of this opinion and order of court.

## I.

The controlling issue is whether Mr. Lammert may withhold documents on the ground that they are protected by the attorney-client privilege. There is limited case law addressing the issue of whether Mr. Lammert may invoke the attorney-client privilege on behalf of the defendant-corporations that are no longer doing business.

Ordinarily, it is the client or former client, rather than the lawyer, that raises the privilege. In our case, only the lawyer is claiming the privilege on behalf of his former clients.

However, a lawyer is expected to raise the attorney-client privilege on behalf of a former client who is now deceased. The reasoning in support of allowing counsel to raise the privilege where the client is deceased is set forth by the Supreme Court of the United States in *Swidler & Berlin v. U.S.*, 524 U.S. 399 (1998):

Despite the scholarly criticism, we think there are weighty reasons that counsel in favor of posthumous application. Knowing that communications will remain confidential even after death encourages the client to communicate fully and frankly with counsel. While the fear of disclosure, and the consequent withholding of

---

1. Plaintiffs are not claiming that Mr. Lammert was involved in any scheme to transfer assets in order to avoid payment of creditors.

information from counsel, may be reduced if disclosure is limited to posthumous disclosure in a criminal context, it seems unreasonable to assume that it vanishes altogether. Clients may be concerned about reputation, civil liability, or possible harm to friends or family. Posthumous disclosure of such communications may be as feared as disclosure during the client's lifetime.

...

The independent counsel assumes, incorrectly we believe, that the privilege is analogous to the fifth amendment's protection against self-incrimination. But as suggested above, the privilege serves much broader purposes. Clients consult attorneys for a wide variety of reasons, only one of which involves possible criminal liability. Many attorneys act as counselors on personal and family matters, where, in the course of obtaining the desired advice, confidences about family members of financial problems must be revealed in order to assure sound legal advice. The same is true of owners of small businesses who may regularly consult their attorneys about a variety of problems arising in the course of the business. These confidences may not come close to any sort of admission of criminal wrongdoing, but nonetheless be matters which the client would not wish divulged.

*Id.* at 407-408.

This justification for allowing the attorney-client privilege to survive the death of a client does not apply to a corporate entity that no longer conducts business. In a corporate setting, corporate officers are not going to

be reluctant to talk to counsel because of the possibility that the information could be communicated when the corporation is dissolved. This is so because the client's communications can be disclosed by new management or a trustee in bankruptcy. Thus, a corporate official does not have the same expectations as the client who is an individual.

Furthermore, a corporation that has ceased to exist is not concerned about reputation, civil liability, or harm to friends or family.

Moreover, see Comment k to § 73 of the Restatement (Third) of the Law Governing Lawyers which states: "When a corporation or other organization has ceased to have a legal existence such that no person can act in its behalf, ordinarily the attorney-client privilege terminates...."

Mr. Lammert appears to take the position that he is obligated to protect his former clients. However, they do not exist. Thus, it appears that he is seeking to protect the interests of individuals who were officers and employees of the former corporations. Case law provides that corporate counsel is obligated to protect the interests of the corporation-not the individual interests of its officers and directors. The corporate interests no longer need to be protected.

## II.

Mr. Lammert states that plaintiffs' subpoena reaches thousands of documents that are in his possession, custody, or control. He further states that it would be an extreme hardship for him to produce these documents because he

cannot blindly turn over the documents. Instead, he must review each document to determine if it is privileged (attorney-client or work-product) or if it is subject to a confidentiality and non-disclosure agreement.

I disagree. For the reasons I discussed, the attorney-client privilege does not protect documents in Mr. Lammert's possession, custody, or control. The work product doctrine does not bar production of any of the documents because they were not prepared for use in this litigation. Mr. Lammert does not violate any confidentiality or non-disclosure agreements by turning over documents pursuant to a court order. Thus, Mr. Lammert may blindly turn over the documents.

### III.

While I agree with Mr. Lammert that the discovery which plaintiffs seek should be characterized as pre-complaint discovery, when I weigh the importance of the discovery request against the burdens imposed on Mr. Lammert, I conclude that the discovery should be permitted. *See* Pa.R.C.P. No. 4003.8.

For these reasons, I enter the following order of court:

### ORDER OF COURT

On this 26 day of February, 2014, it is hereby ordered that Thomas K. Lammert, Jr., Esquire's motion to quash subpoena and for protective order is denied.